UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAVIGANT CONSULTING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 02-CV-2186-B |
| | § | ECF |
| JOHN WILKINSON, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

This case is before the Court on remand from the Fifth Circuit Court of Appeals. The Circuit directed this Court to revisit the amount of the attorneys' fees awarded to the Plaintiff in light of recent Texas Supreme Court authority. The sole issue to be determined is whether the Court's prior award of attorneys' fees in the amount of $574,149.60 should be adjusted in light of the modified standard for fee segregation announced in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). Applying the *Chapa* standard to the fees in question, the Court finds that no change in the fee award is warranted under the circumstances of this case and therefore that Plaintiff, Navigant Consulting, Inc., is entitled to the attorneys' fees previously awarded.

### I. Background

Plaintiff Navigant Consulting, Inc. ("NCI") filed this action against Defendants John Wilkinson ("Wilkinson") and Robert Canales ("Canales") on October 8, 2002, bringing claims of misappropriation of trade secrets, misappropriation of pecuniary interest, violation of the Illinois Trade Secrets Act, conversion, breach of contract, breach of fiduciary duty, and tortious interference

1

with a contract. (doc. 1). On November 5, 2002, NCI amended its Complaint to add Sharon Taulman ("Taulman") as a Defendant, making the same allegations against her as the other two Defendants. (doc. 9). Defendants answered and brought counterclaims for breach of contract and defamation. (docs. 16, 31, 69).

Trial in the case was originally set for May 3, 2004, and the parties filed motions for summary judgment in early 2004. The law firm of Lynn, Tillotson & Pinker, L.L.P. ("LTP") entered its appearance on March 16, 2004 and was designated lead counsel on April 7, 2004. Trial was then reset to March 7, 2005, then July 11, 2005, and finally to August 1, 2005. Just before trial, on NCI's motion, the Court dismissed NCI's claims for declaratory relief, Illinois trade secret law violations, conversion, and tortious interference with a contract. On July 25, 2005, the Court granted in part and denied in part all of the motions for summary judgment. (doc. 232). The Court dismissed Defendants' defamation claim against NCI, several of NCI's claims against Canales, and a portion of one of NCI's claims against Wilkinson and Taulman. The case was tried before a jury from August 1 to August 9, 2005. Prior to jury deliberations, the Court dismissed all remaining claims against Canales.

Three of NCI's causes of action against Wilkinson and Taulman were submitted to the jury - breach of the Value Sharing Retention Program ("VSRP") agreement, breach of fiduciary duty, and misappropriation of trade secrets. The jury returned a verdict for NCI on all three claims and awarded damages of $2,117,880 against Wilkinson and $2,037,453 against Taulman. (doc. 271). The damages award against Wilkinson was comprised of $217,880 for breach of contract, $1,500,000 for breach of fiduciary duty, $200,000 for misappropriation of trade secrets, and $200,000 in exemplary damages. (*Id.*). The award against Taulman was identical, except the damages for her

2

breach of contract were only $137,453. (*Id.*). After reducing these awards by $200,000 each - because the misappropriation of trade secrets damages duplicated the breach of fiduciary duty damages - the Court awarded damages of $1,917,880 against Wilkinson and $1,837,453 against Taulman (docs. 321, 323).

NCI filed a motion seeking $1,059,174.50 in attorneys' fees expended in successfully prosecuting this suit and defending against Defendants' counterclaims.[1] The Court deducted $99,930.50 because it characterized much of the work performed by LTP's paralegals as non-recoverable clerical work as opposed to recoverable substantive legal work. (doc. 292 at 5-10). The Court also reduced the requested award by $2,328.00 as a result of duplicate time entries. (*Id.* at 10-11). Because NCI had not fulfilled the presentment requirement of TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 with respect to Wilkinson, NCI could not recover fees from Wilkinson. (*Id.* at 12-14). The Court applied the *Sterling* exception to the duty to segregate attorneys' fees for inextricably intertwined claims. (Id. at 15-18 (citing *Stewart Title Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991)). Based on its assessment of which claims were inextricably intertwined, the Court awarded NCI 60% of its remaining $956,916.00 in fees, amounting to $574,149.60. (*Id.* at 18). The Court proceeded to consider the *Andersen* factors and found that this amount was reasonable. (*Id.* at 18-19 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

Wilkinson and Taulman appealed the Court's judgment on the following grounds: (1) the evidence presented at trial was insufficient to support the jury's verdict; (2) the jury instructions erroneously placed the burden of persuasion on the Defendants and were internally inconsistent; (3)

---

[1] Prior to trial, the parties agreed to submit the issue of attorneys' fees to the Court by way of affidavits after trial, if necessary.

3

the award of attorneys' fees against Taulman was erroneous; (4) the Court erred in permitting portions of NCI's controller's testimony; and (5) the awards for breach of fiduciary duty were duplicative. The Fifth Circuit Court of Appeals affirmed this Court's judgment on all of these grounds except for attorneys' fees. The Court of Appeals vacated the award of attorneys' fees and remanded this issue to this Court for consideration under the new standard established in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). In compliance with this Court's instructions, NCI filed a Motion for Attorneys' Fees on February 15, 2008 (doc. 343); Taulman filed a Response on March 6, 2008 (doc. 344); and NCI filed a Reply on March 21, 2008 (doc. 346).

## II. Analysis

### A. *Request for Attorneys' Fees*

Recovery of attorneys' fees under Texas law turns upon whether contractual or statutory authorization exists for such fees. *Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992); *Gulf State Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). The Texas Civil Practice and Remedies Code permits prevailing parties to recover their attorneys' fees in breach of contract actions. TEX. CIV. PRAC. & REM. CODE § 38.001(8) (Vernon 1997 & Supp. 2005). Here, for the reasons set forth in detail in the Court's previous fee award, NCI may recover its attorneys' fees incurred in connection with its breach of contract action against Taulman. NCI may also recoup fees incurred as a result of its legal work on other (unrecoverable) claims to the extent that its work on these other claims was "so intertwined" with its efforts on the recoverable claim (the Taulman breach of contract claim) that it advanced both claims. *Chapa*, 212 S.W.3d at *314.*

A party seeking attorneys' fees has a duty to segregate nonrecoverable fees from recoverable fees. *Id.* at 311. In 1991, the Supreme Court of Texas in *Sterling* recognized an exception to this

4

duty to segregate:

> "A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.' Therefore, when the causes of action involved in the suit are dependant upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseperable,' the party suing for attorney's fees may recover the entire amount covering all claims."

*Id.* (quoting *Sterling*, 822 S.W.2d at 11-12) (other citations omitted). The Supreme Court of Texas recently revisited the *Sterling* exception and modified it as follows:

> Accordingly, we reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. We modify *Sterling* to that extent.

*Id.* at 313-14.

NCI seeks $574,149.60, or 60% of $956,916.00, in attorneys' fees - the amount this Court previously awarded prior to appeal. In support of its Motion for Attorneys' Fees, the company submitted an affidavit of its attorney Michael P. Lynn ("Lynn") opining that 60% of the fees would have been incurred without the claims for which fees were not recoverable. Lynn estimated that NCI incurred an additional 40% in attorneys' fees due to the claims for which attorneys' fees are not recoverable. He stated, "While NCI also pursued a breach of fiduciary duty claim and a misappropriation of trade secrets [claim], the work on the breach of contract claim permeated the entire case, and to the extent that attorneys' work advanced other claims for which attorneys' fees are not available, that worked [sic] served a double purpose by also advancing the breach of contract claim against Taulman." (App. 9). The fee request also did not include fees incurred on appeal or fees that NCI will incur in presenting the instant Motion. (*Id.*).

5

In response, Taulman pointed out the following factors:

(1) The second amended complaint included twelve counts against three defendants.
(2) The amended counterclaim included three counter-claims against NCI.
(3) NCI included fourteen affirmative defenses to the defamation claim in its answer.
(4) The summary judgment briefing focused on the breach of fiduciary duty claim, the damages accruing from that claim, and the defamation counterclaim.
(5) The Court dismissed four of NCI's claims before trial.
(6) NCI's trial brief, which was thirty-five pages long, only devoted one and a half pages to the breach of contract claim.
(7) NCI's proposed seventy-one page jury charge only devoted five pages to the breach of contract claim against Taulman.
(8) NCI's trial brief, which was 15 pages long and included 242 pages of exhibits, did not involve the breach of contract claim against Taulman.
(9) NCI's amended seventy-three page jury charge only devoted six pages to the breach of contract claim against Taulman.
(10) In the second amended joint pretrial order, four of NCI's eighteen disputed issues of fact and two of NCI's eleven disputed issues of law related to the breach of contract claim against Taulman.
(11) NCI dismissed all claims against Canales before the case was submitted to the jury.
(12) NCI only submitted three claims to the jury against both Wilkinson and Taulman, and NCI is only entitled to recover against Taulman.
(13) The damages for breach of the VSRP were a forfeiture of the amounts Taulman received, which was stipulated before trial. Therefore, the discovery and research relating to damages was irrelevant to the breach of contract claim.
(14) Legal tasks directed to whether NCI's internal financial data and projections constituted trade secrets was irrelevant to the breach of contract claim.
(15) Legal tasks involving whether the Defendants had a fiduciary duty to disclose their plans to compete were irrelevant to the breach of contract claims.

(Resp. 6-7). Taulman concludes that the Court should discount NCI's attorneys' fees by at least 65%. (*Id.* at 7-8).

While trial courts have discretion in fashioning the appropriate amount of attorneys' fees, their decision whether and how to segregate fees is a determination subject to *de novo* review on appeal. *See Chapa*, 212 S.W.3d at *312*; *Fluorine On Call, Ltd. v. Flurogas Ltd.*, 380 F.3d 849, 867 (5th Cir. 2004). On appeal, the Fifth Circuit determined that this Court did not abuse its discretion by

6

awarding NCI 60% of its fees, representing fees for "inextricably intertwined" facts - as opposed to denying their fees entirely for failing to segregate the recoverable fees from the unrecoverable. (doc. 329 at 34). And in remanding the case for review of the fee award under the new *Chapa* standard, the Appeals Court did not suggest that a reduction in the previous award would necessarily result. As *Chapa* recognizes, allocating attorneys' fees is not a precise science:

> But *Sterling* was certainly correct that many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other. Many of the services involved in preparing a contract or DTPA claim for trial must still be incurred if tort claims are appended to it, adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, *voire dire* of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.

*Chapa*, 212 S.W.3d at 313. The Court in *Chapa* went on to provide guidance regarding what type of proof is (and is not) required for attorneys' fees:

> This standard does not require more precise proof for attorney's fees than for any other claims or expenses. Here, Chapa's attorneys did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition; an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim.

*Id.* at 314.

In keeping with the Texas Supreme Court's suggestion in *Chapa* and as described in more detail above, Lynn submitted an affidavit opining that 60% of the requested attorneys' fees would have been incurred if the breach of contact claim had been the only claim. Notably, Taulman did not submit an opposing affidavit. Instead, Taulman pointed out the fifteen factors listed above which the Court finds do not affect the award in this instance for several reasons.

First, factors 1-4 have little bearing on the analysis. As for factors 1 and 3, NCI's second

7

amended complaint and NCI's answer to the counterclaims, both were filed prior to March 16, 2004–the date that LTP entered its appearance in this lawsuit. LTP responds that it did not prepare these documents and did not include the attorneys' fees incurred for preparing these documents in its motion for fees. (Reply 6). With respect to factor 2, the Court will not deduct for work on the counterclaims because NCI does not seek the fees for the work of the law firm of Touchstone, Berry, Johnston, Beall & Smith, L.L.P., the firm that handled the defamation counterclaims. (App. 8). Factor 4 is not significant because LTP conceded that it did not participate "in the vast majority of summary judgment briefing." (Reply 6).

As for the number of pages devoted in a party's documents to certain claims (factors 6-10) as well as the remaining considerations (5, 11-15), while relevant under the proper circumstances, the Court finds none determinative here given the considerations involved in the Court's previous award and the evidence at hand. With respect to pages per claim, in *Chapa*, the court specifically noted that attorneys were not required to keep separate time records for discrete causes of action when drafting their petitions. *Chapa*, 212 S.W.3d at 314. Instead, *Chapa* advised, it may[2] suffice for the attorney involved to submit an opinion stating essentially that the large majority (*Chapa* used a "95%" figure) of their drafting time would have been necessary even if the non-recoverable claim(s) had not been in the case. *Id.* Here, Lynn's opinion stating, *inter alia*, that the legal work on the unrecoverable claims served a "double purpose" by also advancing the breach of contract claim, supplies precisely what the *Chapa* court suggested could be relied upon by a court in finding that the two types of fees were inseparable. *Id.*

---

[2] This is not to say that affidavit or other attorney testimony will always suffice to establish the *Chapa* standard.

8

Lynn's opinion that 60% of the legal fees requested would have been incurred regardless of the presence of the non-recoverable claims in the case also comports with this Court's initial determination on the proper allocation between fees and claims. Further, in its original order on attorneys' fees, the Court considered not only whether 60% of the fees were incurred for inextricably intertwined claims but, in so doing, also considered whether the work on the non-recoverable claims "tended to prove" ("advanced" under *Chapa*) the recoverable breach of contract claim:

> ...[T]here are clearly some issues inextricably intertwined with the breach of contract claim against Taulman. For example, Wilkinson and Taulman often worked in tandem and disclosed the same information to competitors; thus, proof that the information was "confidential" for Taulman also tends to prove the misappropriation claims against both Wilkinson and Taulman, as well as the breach of contract against Wilkinson. Solicitation of employees as to Taulman also tends to show misappropriation of pecuniary interest, tortious interference with a contract, and breach of fiduciary duty...[3]

(doc. 292 at 17-18). The Court ultimately determined that the fee submissions were too vague to be certain on the segregation issue and, consequently, reduced NCI's fees by almost half. In so doing, the Court generally took into consideration many of the factors identified by Taulman in nos. 5-15 above. To the extent it did not consider one or more of these factors, the Court now finds that the 40% reduction adequately accounts for these concerns. The Court conducted an exhaustive review of the records and briefing submitted in connection with the original fee request before settling on the final attorney's fees award. The Court specifically considered whether work on the non-recoverable claims "tended to prove" the breach of contract claim - a key factor in *Chapa*. This, in addition to the

---

[3] The Fifth Circuit Court of Appeals appears to agree that the Court considered some of the *Chapa* factors in its original analysis: "We note that the district court appeared to base its assessment of whether Navigant's claims were intertwined at least in part on a consideration of whether the work performed by Navigant's attorneys on particular claims was related to Taulman's breach of contract claims." (doc. 329 at 34 n.15).

Court's first-hand knowledge of the legal work on the case, supports not disturbing the original award. Lynn's post-remand affidavit adds further support that the *Chapa* standard has been met.

A final word on the reasonableness of the fees; Compared to many cases involving attorneys' fees requests, this Court had extensive first-hand observations of this litigation from summary judgment through post trial proceedings. The evidence at trial alone established the interrelatedness of the claims at issue here. A cursory review of the opening statements and closing arguments at trial reveals that evidence of the breach of contract claim advanced the other claims and vice versa. Further, the high quality of the legal work on both sides of the case was clear to the Court throughout the proceedings - both in-court and in the briefing. The case was exceptionally hard-fought. From the time Lynn's firm was engaged in the case before the trial even began, there are over one-hundred docket entries.[4]

In sum, the Court is of the opinion that a 40% reduction sufficiently takes into account the factors raised by Taulman, meets the requirements of *Chapa*, and is the most reasonable reduction considering all of the circumstances. Accordingly, the Court finds that $574,149.60 is the appropriate amount of attorneys' fees.[5]

## B. *Request for Costs*

---

[4] In addressing the quality of the legal work, the Court incorporates its reasoning in its prior opinion on attorneys' fees on the reasonableness of the fees under *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[5] Citing *Heliflight, Inc. v. Bell/Agusta Aerospace Co., LLC*, 2007 WL 4373259 (N.D. Tex. 2007), Taulman also argues that the amount of fees should be further reduced because there are numerous entries consisting of attorneys or paralegals conferring with one another or reviewing the work performed by another timekeeper. (Resp. 8). The Court has reviewed the time records and does not find that a further reduction is warranted on this basis.

NCI also moved for $8,495.82 as costs pursuant to Federal Rule of Civil Procedure 54(d)(1) because it was the prevailing party at trial. (Mot. 1-2). In its amended judgment filed on August 22, 2006, the Court awarded NCI costs. (doc. 323). Local Rule 54.1 provides:

> A party awarded costs by final judgment or by judgment that a presiding judge directs be entered as final under Fed. R. Civ. P. 54(b) must apply to the clerk for taxation of such costs by filing a bill of costs in a form approved by the clerk. Unless otherwise provided by statute or by order of the presiding judge, the bill of costs must be filed with the clerk and served on any party entitled to such service no later than 14 days after the clerk enters the judgment on the docket.

As Taulman points out in her Response, NCI did not file the required bill of costs within fourteen days after the entry of judgment. (Resp. 8). Instead, NCI attached a bill of costs dated February 15, 2008 to the instant motion. NCI did not address its request for costs in its Reply. Accordingly, the Court **DENIES** NCI's request for costs of $8,495.82 for failure to comply with Local Rule 54.1. *See Van Horn v. Lopez-Beaver*, 2008 WL 555361, at *5 (N.D. Tex. 2008) (denying motion for costs for failure to timely file a bill of costs under Local Rule 54.1).

### III. Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** NCI's Motion fo r Attorneys' Fees. The Court **AWARDS** NCI $574,149.60 in attorneys' fees from Taulman. The Court **DENIES** NCI's request for costs.

SO ORDERED.

SIGNED July 16th , 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE